IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TARA MEEKS, )<br>)<br>      **Plaintiff,** )<br>)<br>      v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>      **Defendant.** ) | Case No. CIV-20-453-SPS |

## OPINION AND ORDER

The claimant Tara Meeks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 31, 201).  She graduated high school and has no past relevant work (Tr. 23, 254).  The claimant alleges that she has been unable to work since August 1, 2013, due to fibromyalgia, back pain, shoulder pain, and pain in her feet (Tr. 233).

## Procedural History

On September 7, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her application was denied.  ALJ Bill Jones conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 19, 2020 (Tr. 12-25).  The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she could perform work comprised of simple, routine, and repetitive tasks, involving only simple, work-related decisions with few, if

any, workplace changes, and no more than incidental contact with coworkers, supervisors, and the general public (Tr. 18).  The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, kitchen helper, hand packager, and packing machine operator (Tr. 23-24).

## Review

The claimant's sole contention of error is that the ALJ failed to properly account for the opinion of Linda Hoffman, A-PRN, when he found it unpersuasive. The Court agrees with this contention, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, morbid obesity, fibromyalgia, and unspecified depressive disorder (Tr. 30).  The relevant medical record as to the claimant's physical impairments reveals that the claimant was regularly noted to have chronic low back pain and joint pain at multiple sites, in addition to a number of instances of asthma/cough related to upper respiratory infections and/or sinusitis, while she received treatment with Nurse Practitioner Linda Hoffman at Heavener Medical Clinic (Tr. 378-411, 518-551).  On November 30, 2017, treatment notes indicate she had decreased range of motion of the shoulders, as well as pain with range of motion in the shoulders, back, hips, and knees (Tr. 400-402, 466-467, 520).  On July 19, 2018, the claimant presented for treatment of her low back pain, which was noted to be a chronic, but intermittent problem with an acute exacerbation on that day,

and she had decreased range of motion along with pain with range of motion in the back (Tr. 380-382).

The claimant had a number of x-rays conducted on November 30, 2017. An x-ray of the claimant's left shoulder reflects no fracture, but a subacromial spur that might reflect impingement (Tr. 459). An x-ray of her right shoulder from the same day also reflects a subacromial spur that may reflect impingement (Tr. 460). A lumbar spine x-ray revealed moderate degenerative changes, and a cervical spine x-ray revealed mild degenerative changes (Tr. 462-463). A comparison x-ray conducted on February 7, 2020, as to the right shoulder, revealed similar subacromial spur with new small superior spur lateral acromion (Tr. 506). On February 20, 2020, a bilateral frontal weight-bearing x-ray of both knees revealed bilateral mild narrowing of the lateral compartment with some associated osteophytosis, with no acute fracture deformity; the medial compartment joint space was preserved (Tr. 513).

The claimant also submitted treatment notes dated May 2018 through at least May 2019 from Total Health Solutions, where she received pain management treatment for her shoulder and back pain (Tr. 421-458). She reported that her pain was moderate to severe, though constant, and that her pain increased with sitting, walking, and bending over, but that medication decreased her pain (Tr. 421). Even with medication, she reported pain often being at a 7/10 (or higher) at her monthly checkups (Tr. 423, 425, 427, 430). Also, these treatment records reflect a number of attempts to order the claimant an MRI, but that her insurance kept denying the request (Tr. 432-436).

On November 15, 2018, Dr. Christopher Sudduth, M.D., conducted a physical examination of the claimant (Tr. 360-367). She had a steady, symmetric, and slow gait with no use of an assistive device, and she had good hand-eye coordination (Tr. 362). However, she also had reduced range of motion of the back and pain with range of motion, shoulder pain, and positive straight leg raise tests (Tr. 364-367). Dr. Sudduth further noted that the claimant was unable to squat and rise from that position, unable to heel/toe walk, unable to stand or hop on either foot, and she had abnormal tandem walking, but that she could rise from a sitting position without assistance and could get up and down from the exam table without difficulty (Tr. 362). In his "Impression," Dr. Sudduth summarized his findings, including, *inter alia*, the claimant's inability to squat or heel/toe walk, and her abnormal tandem walking, and stated she had moderate-to-severe decreased range of motion of the lumbar spine with lumbar spine pain on range of motion assessment and positive straight leg raise test bilaterally, as well as 80% range of motion of the left hip, 70% range of motion of the right hip, and significant shoulder pain despite having a full range of motion of the shoulders (Tr. 363). Finally, he noted she had 18/18 "exquisitely positive fibromyalgia tender points" (Tr. 363).

On December 18, 2019, Nurse Practitioner Hoffman completed a form RFC assessment as to the claimant's physical impairments, in which she indicated, *inter alia*, that the claimant could lift/carry less than ten pounds frequently and occasionally, stand/walk zero minutes at a time and less than two hours in an eight-hour workday, and sit fifteen minutes and a time and less than two hours total in an eight-hour workday (Tr. 487-488). In support, she cited the claimant's joint pain, slow and unsteady gait, and

chronic back pain (Tr. 488).  Additionally, she indicated the claimant could only occasionally stoop/bend or climb stairs, and never twist, crouch, or climb ladders, and that neuropathy caused her to have a poor grip (Tr. 489).  She further noted the claimant had a long history of asthma symptoms, including frequent shortness of breath and upper respiratory infections and sinusitis, and indicated the claimant need restrictions from most environmental exposures except noise (Tr. 490).  Finally, she checked a box that the claimant would be absent from work about three times per month (Tr. 491).

On May 20, 2020, treatment notes from Ms. Hoffman indicate the claimant's fibromyalgia had been progressively worsening, and that the primary joints affected included the spine and knees (Tr. 526).  She continued to have pain with range of motion, as well as chronic muscle and bone pain (Tr. 528, 536).

As to her physical impairments, state reviewing physicians found initially and upon review that the claimant could perform medium work with no additional postural, manipulative, or environmental limitations (Tr. 81-82, 98-100).  As to her mental impairments, state reviewing physicians made identical conclusions initially and upon review, *i. e.*, they found she could perform simple and more complex tasks of 1-4 steps with routine supervision, interact appropriately with coworkers and supervisors as well as for superficial public contact, and she was able to adapt to a work setting and some forewarned changes in a usually stable work setting (Tr. 84, 102).

In his written opinion at step four, the ALJ summarized the claimant's testimony and the medical record.  In discussing the opinion evidence as to the claimant's physical impairments, the ALJ noted the objective evidence in the record included x-rays and

positive tender points. As to Dr. Sudduth's assessment, the ALJ noted the decreased range of motion, positive straight leg raise tests, and pain with range of motion and slow gait, but mistakenly indicated that the claimant was able to squat and rise from a squatting position when he also noted she was able to rise from a sitting position and get on and off the exam table (Tr. 19). The ALJ noted that the claimant had reported lying down for much of the day, but that treatment notes do not show doctors recommending she do so (Tr. 19-20). He also noted that medications alleviated her pain, as well as one treatment note where he states the claimant reported her pain was well-controlled with medication, but the record is not clear that the claimant *reported* this and the ALJ does not mention that the claimant's pain was still a 7/10 at that same visit (Tr. 20, 482). He then concluded that the claimant's reported activities were inconsistent with her reported functional limitations (Tr. 20). The ALJ found the state reviewing physician opinions persuasive as to her ability to perform medium work, finding them supported by their reviews of the record and consistent with longitudinal evidence including Dr. Sudduth's findings of, *inter alia*, intact sensation, only slightly decreased strength, steady gait, and full range of motion (Tr. 21-22). As to Nurse Practitioner Hoffman's opinion, the ALJ found it to be unpersuasive, asserting that it was inconsistent with Dr. Sudduth's because the claimant had intact sensation and only slight decreased strength at his November 2018 consultative exam, as well as a steady and symmetric gait and full range of motion (Tr. 22-23). The ALJ did not note that both consistently reported she has a slow gait, in addition to pain with range of motion with nearly every treatment or examining record (Tr. 362-363, 488).

      The claimant contends that the ALJ failed to properly evaluate Ms. Hoffman's

opinion as a nurse practitioner, and the Court agrees. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must specifically explain how both factors were considered, while the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). In this case, while the ALJ summarized Ms. Hoffman's opinion, he failed to properly address the supportability and

consistency factors in finding her opinion persuasive.

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ asserted that Ms. Hoffman's opinion was not supported by her longitudinal treatment history because the claimant generally had intact sensation and only slightly decreased strength of the bilateral lower extremities (Tr. 22). The ALJ did not, however, discuss the repeated records regarding the claimant's chronic and worsening pain-producing impairments, her slow gait, and the evidence as to her asthma which would support environmental limitations. Moreover, the ALJ found her opinion inconsistent with Dr. Sudduth's findings. However, the ALJ mistakenly found that Dr. Sudduth determined that claimant was *able* to squat and rise when she was *unable* to do so, and further ignored his findings consistent with Nurse Practitioner Hoffman's regarding her pain as well as his findings of limited range of motion of the back and shoulder that he described as "moderate to severe." This failure to properly account for the evidence has a direct impact on the ALJ's assessment as to the claimant's ability to lift, carry, sit, stand, and walk, *i. e.*, her RFC. This was error. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not

discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Here, the ALJ has failed to explain how, *inter alia*, the claimant's documented reduced range of motion, pain with range of motion, slow gait, inability to squat, and recurring breathing illnesses are accounted for in the RFC. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if

any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**